UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHARLES R. SMITH, JR., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:17-2236 |
| § | |
| SGT. BARNES, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

In this civil rights action, Plaintiff Charles R. Smith, Jr., proceeds *pro se* and *in forma pauperis*. Smith sues seven defendants in connection with his arrest on May 4, 2017. Defendants have moved for summary judgment and dismissal of all claims against them. *See* Dkt. 56, Dkt. 60, Dkt. 61. Smith has not responded to the motions, and the time to respond has expired. The motions are ripe for decision. After reviewing the pleadings, the motions and briefing, the applicable law, and all matters of record, the Court concludes that summary judgment should be **granted** for Defendants and all of Smith's claims should be **dismissed** for the reasons explained below.

### I. BACKGROUND

Smith sues four Houston Police Department ("HPD") officers involved in his arrest: Sergeant Barnes, Officer Fimbinger, Officer Littler, and Officer Jurecek.[1] He also sues the City of Houston and two HPD supervisory officials, Lieutenant C.A. Granger and Captain D.B. Edwards. His complaint alleges that all Defendants violated his rights

---
[1] Fimbinger was not served with process and has not appeared in this case (Dkt. 20).

under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. He also brings claims under Texas law for assault, aggravated assault, criminal conspiracy, and engaging in organized criminal activity (Dkt. 39, at 5).[2]

On or about May 4, 2017, Smith was arrested for theft on Aldine Bender Road in Houston. Defendants have submitted the HPD offense report from Smith's arrest (Dkt. 61-3). Smith states that, at the time he was apprehended, he was leaning over into the passenger seat of an HPD "bait truck" that he had stolen (Dkt. 39, at 3; *id.* at 9 (Plaintiff's declaration)). He recounts that he "looked up and realized the vehicle was totally surrounded by a large number of police officers on foot and in vehicles" (*id.*). The HPD offense report contains the officers' statements that Smith attempted to flee on foot and to escape into another vehicle that was next to the "bait truck" (*see, e.g.*, Dkt. 61-3, at 13). Smith claims that he was compliant with officer's instructions, exited the vehicle as instructed, was unarmed, and did not evade or flee from the officers (Dkt. 39, at 3).

Smith alleges that Defendants Barnes, Fimbinger, Littler, and Jurecek aggressively threw him to the ground and used force against him, even after he had been handcuffed:

> Plaintiff was aggressively thrown to the ground by a group of officers later identified by Internal Affairs . . . . as [Barnes, Fimbinger, Littler, and Jurecek]. Then that group of officers punched, kicked, struck, and twisted Plaintiff's right arm into a position that caused great pain in his wrist and shoulder. Plaintiff sustain[ed] injuries to his head, neck, back, right shoulder, right wrist, and right knee during this attack.
>
> While in the process of being handcuffed and lying prone on the ground,

---

[2] Throughout this memorandum opinion, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case-filing ("ECF") system.

> this group of four officers continued their attack in a rage of aggression that was a wanton and unnecessary infliction of pain that was both malicious and sadistic.

(*id*. at 3-4, ¶¶ 8-9). *See id*. at 10 (alleging in declaration that he "felt multiple strikes from several different directions" and experienced "tremendous pain"). The officers' narratives in the offense report state that, after Smith came out of the bait vehicle, they gave him multiple commands to get on the ground; that Smith did not comply with the officers' instructions; that officers forced Smith to the ground; that Smith kept his hands under his stomach despite officers' commands to show them his hands; and that the officers forcefully pulled Smith's hands out from under his body in order to handcuff him behind his back (*see* Dkt. 61-3, at 11-12 (Jurecek's narrative); *id.* at 13 (Littler's narrative); *id.* at 14-15 (Fimbinger's narrative); *id*. at 16-17 (Barnes' narrative)). The officers argue that the force used against Smith to gain control over his hands was reasonable and necessary to effect his arrest (Dkt. 61, at 10).[3]

The events surrounding Smith's arrest were recorded by the officers' body cameras and vehicle cameras, and Defendants have submitted 16 video recordings (Dkt. 64). Two of the videos capture the officers apprehending Smith. In one video, which is approximately four minutes long, the officer with the camera arrives on the scene while other officers are yelling commands at two suspects, one of whom is Smith (Dkt. 64,

---

[3] The HPD offense report states that Smith was arrested for automobile theft and for evading arrest (Dkt. 61-3, at 4). Defendants point to public records as evidence that Smith was indicted on both charges, that he pleaded guilty to theft, and that the prosecution dismissed the evasion charge as part of the plea agreement. Dkt. 61, at 10 & nn. 1 & 2 (citing Harris County records). Smith maintains that the evasion charge was "dismissed for lack of evidence." *See* Dkt. 39, at 3 ("Plaintiff alleges Defendants maliciously added the charge of evading arrest in an attempt to justify their excessive use of force"). This factual dispute is not material to the dispositive issues before the Court.

0215-FIMBINGER, at 02:10-2:15). The other suspect is visible complying with the officers' instructions to get on the ground (*id*.). Although the video is mostly obscured as officers apprehend Smith, the audio captures officers yelling "get on the ground" multiple times (*id*. at 2:16-2:26). Smith's head then comes into the frame as he gets to the ground (*id*. at 2:26), and the audio captures officers instructing the suspect to get his "hands out" at least seven times (*id*. at 2:27-2:35). Smith is then visible face down in the parking lot as officers handcuff him behind his back (*id*. at 2:36-3:00). The video captures no use of force after officers gain control of Smith's hands. The second video, which is approximately 11 minutes long, reflects the same events (*id*. 0219-KRISTI BARNES 1, at 3:20-4:10).

Smith claims that, because the four officers used unreasonable force against him during the arrest, he "nearly lost consciousness when some object or someone struck his head and his head struck the ground" (Dkt. 39, at 4). He alleges that he continues to suffer from his physical injuries and that he receives unspecified ongoing treatment (*id*. at 5). He also alleges that he suffers from post-traumatic stress disorder due to the trauma of the incident (*id*.). The HPD offense report states that Smith did not complain of injuries (Dkt. 61-3, at 12, 13, 17).

Smith sues Defendants Edwards and Granger, HPD supervisory officials, alleging that they failed to prevent or stop the attack and "did nothing to train these officers to not violate arrestees' rights" (Dkt. 39, at 4). Edwards and Granger present affidavits averring that, although they were HPD supervisors, they did not supervise the officers who are

Defendants in this action at the time Smith was arrested and had no personal involvement in the arrest (Dkt. 60, at 8; Dkt. 60-1; Dkt. 60-2).

Smith also sues the City of Houston and alleges that the City's policies and ordinances violated his constitutional rights by permitting officers to assault compliant arrestees (Dkt. 39, at 6).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional

facts when necessary, the facts alleged are clearly baseless." *Id.* (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B.  Summary Judgment—Rule 56

Defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant

to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. ANALYSIS

Smith's complaint (Dkt. 39) alleges that Defendants violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. He also brings claims under Texas law for assault, aggravated assault, criminal conspiracy, and engaging in organized criminal activity. Fimbinger was not served with process and has not appeared in this lawsuit (Dkt. 20). All other Defendants seek summary judgment on all of Smith's claims. Smith has not responded to the summary judgment motions.

### A. Qualified Immunity

Defendants Barnes, Littler, and Jurecek have invoked qualified immunity, and the plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the

plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the posture of this case, the Court proceeds to analyze the merits of Plaintiff's constitutional claims.

### B. Fourth Amendment Excessive Force Claim

Smith alleges that Defendants Barnes, Fimbinger, Littler, and Jurecek used excessive force against him during his arrest for auto theft. He sues the officers in both their individual and official capacities.[4] This claim arises under the Fourth Amendment

---

[4] Smith's claims against the officers in their official capacities are treated as claims against the City of Houston, *see Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), and are discussed below.

to the United States Constitution. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a law enforcement officer, for a constitutional violation. *See Pratt*, 822 F.3d at 180; *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

The Fourth Amendment guarantees the right to be free from excessive force during an arrest. To succeed on the merits of a Fourth Amendment claim, a plaintiff must show (1) an injury that (2) "resulted directly and only from a use of force that was clearly excessive to the need," the excessiveness of which was (3) objectively unreasonable. *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (internal quotation marks and citation omitted); *see Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2016); *Poole v. City of Shreveport*, 691 F.3d 624, 627-28 (5th Cir. 2012). Because some use of force by law enforcement is reasonable when necessary to effect an arrest, a court must decide whether the force used was clearly excessive to the need. *See Scott v. Harris*, 550 U.S. 372, 382-83 (2007). The court must evaluate the use of force "from the perspective of a reasonable officer on the scene," and not "with the 20/20 vision of hindsight." *Griggs*, 841 F.3d at 312.

The court's Fourth Amendment inquiry is fact-intensive and focuses on whether the officers' actions were objectively reasonable, considering the particular circumstances at the time force was used. *Id.* In assessing objective reasonableness, courts look to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting

to flee. *Graham v. Conner*, 490 U.S. 386, 396 (1989); *Westfall*, 903 F.3d at 547. The officer's motive or intention is irrelevant to the inquiry. *Graham*, 490 U.S. at 397.

The Supreme Court has held that, on summary judgment, a court may rely on video evidence in appropriate circumstances.[5]

### 1. Barnes, Littler, and Jurecek

Defendants Barnes, Littler, and Jurecek have moved for summary judgment. Smith alleges that Defendants violated his constitutional rights when they "aggressively" threw him to the ground and then "punched, kicked, struck, and twisted Plaintiff's right arm into a position that caused great pain in his wrist and shoulder" (Dkt. 39, at 3). He also alleges that, "[w]hile in the process of being handcuffed and lying prone on the ground, this group of four officers continued their attack in a rage of aggression" (*id.*). Defendants argue that the force used against Smith to gain control over his hands was reasonable and necessary to effect his arrest. They present the HPD offense report to demonstrate that Smith attempted to flee and that he refused to present his hands for cuffing (Dkt. 61-3).

Both Smith and Defendants urge the Court to rely on the video evidence. Although Smith claims that the video recordings support his claims and show the officers' "attack" continuing after he was on the ground (Dkt. 39, at 3), the videos do not

---

[5] *Scott*, 550 U.S. at 380-81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape"); *see Darden v. City of Fort Worth, Tex*, 880 F.3d 722, 729-30 (5th Cir. 2018) ("a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account").

show officers using force on Smith after he surrendered his hands for cuffing. *See* Dkt. 64, 0215-FIMBINGER, at 02:15–3:00; *id.* 0219-KRISTI BARNES 1, at 3:20-4:10. Rather, the video evidence generally corroborates the offense report, demonstrating that officers gave multiple commands for Smith to get on the ground and then to surrender his hands before they were able to effect the arrest (*id.*).

Smith has not responded to the summary judgment motion and has failed to demonstrate a genuine issue of material fact as to whether Defendants' actions were objectively reasonable given the totality of the circumstances. *See Westfall*, 903 F.3d at 847; *Griggs*, 841 F.3d at 312. The video evidence does not demonstrate a genuine issue of material fact as to whether Defendants' position conduct was objectively reasonable or whether they violated clearly established law. Smith's bare allegations in his pleadings are insufficient to defeat summary judgment. *See Firman*, 685 F.3d at 538; *Jones*, 678 F.3d at 348. Defendants therefore are entitled to summary judgment on Smith's Fourth Amendment claim and, for the same reasons, on qualified immunity grounds.

### 2. Fimbinger

Fimbinger has not appeared in this lawsuit. The Court examines whether Smith's claims against him are appropriately dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B) ("the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous"). A complaint "lacks an arguable basis in fact" and is frivolous if, "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers*, 709 F.3d at 407 (internal quotation marks and citation omitted); *see Samford*, 562 F.3d at 678.

Smith's allegations against him are the same as those against Barnes, Littler, and Jurecek (Dkt. 39, at 3). He urges the Court to rely on the video evidence. As stated above, the video evidence does not support his claims or demonstrate a genuine issue of material fact as to his required Fourth Amendment showing against any officer, including Fimbinger. Moreover, the HPD offense report submitted by other Defendants contains Fimbinger's narrative, completed on the same day as the arrest, which states that Smith refused to obey the officers' command to get on the ground, resisted the officers as they attempted to handcuff him, and that officers "had to force his hands behind his back in order to detain him" (Dkt. 61-3, at 14).

Given the HPD documentary and video evidence contradicting Smith's claims against Fimbinger, his conclusory allegations of force are insufficient to state a non-frivolous claim for relief under the Fourth Amendment standards listed above. *See* 28 U.S.C. § 1915(e)(2)(B); *Iqbal*, 556 U.S. at 678; *Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999) (upholding summary judgment for defendants because "based on the objective factors of [the plaintiff's] medical records . . . [the plaintiff's] allegations are implausible"). His claim against Fimbinger therefore is dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B).

### C. Other Constitutional Claims

Smith asserts also claims under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants seek summary judgment on all claims.

Smith articulates no factual basis for a claim under the Fifth Amendment. To the extent he intends to bring a due process claim, the Fifth Amendment's due process

protections apply only against federal actors. *Blackburn v. City of Marshall*, 42 F.3d 925, 930 n.3 (5th Cir. 1995). Although the Fifth Amendment also protects against self-incriminating statements during custodial interrogation, *see Illinois v. Perkins*, 496 U.S. 292, 296 (1990) (citing *Miranda v. Ariz.*, 384 U.S. 436 (1966)), Smith alleges no facts that would be relevant to such a claim.

Moreover, the Eighth and Fourteenth Amendments do not apply to Smith's claims. The Fourteenth Amendment applies to claims by pretrial detainees, and the Eighth Amendment applies to claims of excessive force by convicted inmates. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) (Fourteenth Amendment); *Hudson v. McMillian*, 503 U.S. 1 (1992) (Eighth Amendment). Because Smith was an arrestee at the time of the alleged use of force against him, rather than a convicted inmate or a pretrial detainee, the Fourth Amendment applies to his claims.

Smith fails to demonstrate a genuine issue of material fact as to any claim under the Fifth, Eighth, or Fourteenth Amendments. Defendants therefore are entitled to summary judgment on these claims.

### D. Claims against Supervisory Officers

Smith alleges that Granger and Edwards, as supervisors of the arresting officers, failed to prevent the use of force against him and failed to discipline or train the officers involved in his arrest (Dkt. 39, at 4). Because Smith sues Edwards and Granger in their official capacity only, his claims are treated as claims against the City. *See Graham*, 473 U.S. at 165-66. Those claims are discussed in the following section of this memorandum.

However, even if Smith had sued Granger and Edwards in their individual capacities, his claim would be subject to dismissal on this summary judgment record. A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citations omitted). *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983"). A failure-to-supervise or failure-to-train claim also requires a showing of deliberate indifference by the supervisor. *See Westfall*, 903 F.3d at 552; *Porter*, 659 F.3d at 446 (a plaintiff "must show that the supervisor acted, or failed to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates" (internal quotation marks, alterations, and citation omitted) (emphasis original)).

In this case, Edwards and Granger present evidence that they were not involved in the arrest and did not supervise the officers who arrested Smith (Dkt. 60-1, Dkt. 60-2). Smith has not responded to Defendants' summary judgment motions and fails to articulate any facts that could support a failure-to-supervise or failure-to-train claim under the authorities cited above. His allegations that Edwards and Granger failed to prevent or stop the attack, or that they "did nothing to train these officers to not violate arrestees' rights" (Dkt. 39, at 4), are conclusory and insufficient to prevent summary judgment. *See Jones*, 678 F.3d at 348. Additionally, Smith pleads no specific facts that could support a claim that Edwards or Granger were deliberately indifferent to an alleged

violation of his rights.  *See Westfall*, 903 F.3d at 552.  Summary judgement therefore is warranted for Edwards and Granger.

   E. **Claims Against the City**

  Smith claims that the City of Houston's "policies and ordinances" violate his rights.  A city can be liable under § 1983 only if its official policy or custom causes the deprivation of a federal right, and not on a theory of *respondeat superior*.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).  A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom."  *Id.* at 541-42 (internal citation and quotation marks omitted).  The existence of an official policy or custom can be shown through "evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority."  *Id.* at 542.

  Smith alleges in his complaint that the City has "policies and ordinances" that direct or allow HPD officers to "assault subdued and cooperative arrestees" (Dkt. 39, at 6).  The City has submitted its use-of-force policy which limits officers to "only the amount of force reasonably necessary to protect themselves or others, to effect an arrest, or to bring an incident under control, even if under the circumstances the law would allow the use of greater force" (Dkt. 56-8, at 2).  It also argues that the video evidence does not support Smith's allegations that his Fourth Amendment rights were violated.

Smith has not responded to the City's summary judgment motion and fails to demonstrate a genuine issue of material fact on the issue. His conclusory allegation in his pleadings that the City had a policy to "assault" arrestees is insufficient to defeat summary judgment. *See Jones*, 678 F.3d at 348. To the extent Smith brings claims against the City for failure to train, supervise, or discipline police officers, he also fails to direct the Court's attention to any evidence that the City had a relevant policy that violated his rights. Again, conclusory allegations in his pleadings are insufficient to defeat summary judgment. *See id.*

## F. State Law Claims

Finally, Smith brings claims against all Defendants for "assault, aggravated assault, criminal conspiracy, and engaging in organized criminal activity under the laws of Texas," citing to Texas Penal Code § 22.01 (assault), § 22.02 (aggravated assault), § 15.02 (criminal conspiracy), § 71.02 (organized crime). *See* Dkt. 39, at 5-6. Defendants have invoked official and governmental immunity.[6]

To the extent Smith brings claims in this lawsuit that Defendants violated the Texas Penal Code, his claims must be dismissed because he does not provide any basis for inferring that the criminal statutes he cites create a private right of action. *See Brown v. de la Cruz*, 156 S.W.3d 560, 567 & n.39 (Tex. 2004); *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 699 (S.D. Tex. 2014).

---

[6] *See* Dkt. 61, at 15 (Defendants Barnes, Littler, and Jurecek claim official immunity from liability for Smith's state law claims); Dkt. 56, at 16 (the City invokes governmental immunity as to any intentional torts).

To the extent Smith intended to bring civil claims against Defendants under state law, those claims will be dismissed without prejudice. In appropriate cases, a district court may exercise supplemental jurisdiction over "claims that are so related to claims in [an action within the court's original jurisdiction] that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a). Because the Court has dismissed all of Smith's claims over which it has original jurisdiction, the Court now declines to exercise supplemental jurisdiction over his state law claims. *See Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999); *Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well") (internal citation and quotation marks omitted).

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. The motion for summary judgment filed by the City of Houston (Dkt. 56) is **GRANTED**.

2. The motion for summary judgment filed by Edwards and Granger (Dkt. 60) is **GRANTED**.

3. The motion for summary judgment filed by Barnes, Littler, and Jurecek (Dkt. 61) is **GRANTED**. Smith's claim against Fimbinger is dismissed under 28 U.S.C. § 1915(e)(2)(B).

4. All of Plaintiff's federal claims are **DISMISSED with prejudice**.

5. To the extent Plaintiff brings civil claims against Defendants under Texas law, his claims are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3).

SIGNED this day 13th day of March, 2020.

_____
George C. Hanks Jr.
United States District Judge